**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Olympian Worldwide Moving & Storage Incorporated,<br><br>                    Plaintiff,<br><br>v.<br><br>Aaron Showalter, et al.,<br><br>                    Defendants. | No. CV-13-00245-PHX-NVW<br><br>**AMENDED ORDER**<br>(to correct citations) |

Before the Court is Third-Party Defendant Allied Van Lines, Inc.'s ("Allied") Motion to Dismiss (Doc. 25), the Response, and the Reply.  Allied's Motion to Dismiss ("Motion") was joined by Counterdefendant Olympian Worldwide Moving & Storage Incorporated ("Olympian") (Doc. 29).  The Motion will be granted and the Third-Party Plaintiffs and Counterclaimants, Aaron and Audrey Showalter, will have leave to amend.

**I.    LEGAL STANDARD ON MOTION TO DISMISS**

When considering a motion to dismiss, a court evaluates the legal sufficiency of the plaintiff's (or claimant's) pleadings.  Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To avoid dismissal, a complaint need include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court may not look beyond facts

1 alleged in the pleadings, documents attached to the pleadings, and matters subject to judicial notice to evaluate legal sufficiency. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam). All allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2012, Plaintiff Olympian, in its capacity as Allied's disclosed household goods agent, transported Defendants Aaron and Audrey Showalters' ("Showalters") property from Mesa, Arizona to Florida pursuant to a bill of lading. Olympian later filed a breach-of-contract action alleging that the Showalters had failed to pay Olympian for the cost of transportation. The Showalters, in turn, filed counterclaims and a Third-Party Complaint against Allied and Olympian based on the allegation that Olympian's employees stole Audrey Showalter's wedding ring during the moving process. The pleading being tested by the Motion, the Showalters' Amended Third-Party Complaint (Doc. 23), suggests that the wedding ring was among the property that the Showalters sought to have Olympian move under the bill of lading. The Showalters' claims, all based on the alleged taking of the wedding ring, include: (1) conversion, (2) negligent hiring and supervision; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; and (5) negligence.

In their Motion, Defendants seek to dismiss the Showalters' Amended Third-Party Complaint on the basis that the claims therein are entirely preempted by the Carmack Amendment. Defendants also argue that Olympian, as an agent of Allied, is not a proper party to the third-party action, as the Carmack Amendment imposes liability on a motor carrier for the acts of its agents. The Showalters argue that the Carmack Amendment does not preempt claims arising out of the alleged theft of the wedding ring and that Olympian is a proper counterdefendant.

## III. LEGAL BACKGROUND ON CARMACK AMENDMENT

In 1906, Congress enacted the Carmack Amendment to the Interstate Commerce

1  Act ("Carmack Amendment"), 49 U.S.C. § 14706, in order to curb "the chaotic disparity
2  which resulted from the application of the multitude of different state laws to interstate
3  shipping." *Coughlin v. United Van Lines, LLC*, 362 F. Supp. 2d 1166, 1167 (C.D. Cal.
4  2005). The Carmack Amendment provided a single law governing the liability of
5  interstate carriers for loss or damage to goods shipped pursuant to interstate bills of
6  lading, thereby lancing much of the state-by-state variation in the treatment of the carrier-
7  shipper relationship. With regard to liability, the Carmack Amendment provides that:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier . . . [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property . . . .

49 U.S.C. § 14706(a)(1). The scope of preemption under Carmack is expansive: "[T]here can be no rational doubt but that Congress intended to take possession of the subject [of interstate common carriers], and supersede all state regulations with reference to it . . . ." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913); *see also Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916) (finding that "the words of the [Carmack Amendment] are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation"); *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007) ("It is well settled that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property."). Even state-law claims that supplement the Carmack Amendment, instead of contradicting it, are preempted. *Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 604 (1915).

IV.   **ANALYSIS**

   A.   **Applicability of the Carmack Amendment**

The Showalters' counterclaims arise from events surrounding the interstate transportation of the Showalters' personal property and household goods, thereby potentially implicating the Carmack Amendment. Further, neither party contends that

- 3 -

Allied is not a common carrier. Accordingly, since the Carmack Amendment may preempt claims against common carriers arising from contracts for interstate shipments, the Showalters' claims may be displaced.

### B.  Interpreting the Facts in the Light Most Favorable to the Showalters

A potentially dispositive factual matter for the purpose of the pending Motion is whether the Showalters' ring was: (1) part of the property to be delivered by Olympian and was not delivered; or (2) not intended to be delivered in the first place. The Showalters' Amended Third Party Complaint does not expressly allege whether or not the ring was part was part of the interstate shipment. (*See* Doc. 23.) However, it does indirectly but repeatedly suggest that the ring was in fact among the goods intended to be shipped. For example, the Showalters assert a breach-of-contract claim based on Olympian and Allied's alleged failure "to securely package and protect the Showalters' personal property for shipment" and to "deliver[] *all* the personal property . . . ." (*Id.* ¶ 25 (emphasis added).) The negligence claim alleges a "duty of care to the Showalters . . . to deliver all of the select household goods to the Showalters' home" and alleges a breach of that duty. (*Id.* ¶ 29-30.) In that same claim, the Showalters' contend that they were damaged by Olympian and Allied's "failure to deliver the select household goods." (*Id.* ¶ 31.) Such language suggests that the wedding ring was among the "select household goods" that Olympian and Allied "fail[ed] to deliver."

The Amended Third Party Complaint is fairly read to say that the wedding ring was intended to be part of the interstate shipment and was not delivered. Even construed in the light most favorable to the Showalters, that complaint still suggests that the Showalters planned to ship the ring through Olympian. The Response to the Motion (Doc. 38) paints a different picture: It asserts flatly that "[t]he stolen ring which forms the basis of the Showalters' claims . . . was not the subject of interstate shipment," and that "the stolen jewelry was not covered by the bill of lading." (Doc. 38 at 3-4.) However, the Response cannot present new allegations for consideration under Rule 12(b)(6). *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)

("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Accordingly, the assumption at present must be that the wedding ring was part of the intended shipment, as suggested by the Showalters' operative pleading.

### C. Preemption

Given the interpretation that the wedding ring was part of the property to be delivered under the interstate-shipment contract, Defendants' Motion succeeds. "It is well settled that the Carmack Amendment constitutes a complete defense to common law claims alleging all manner of harms." *Hall*, 476 F.3d at 689 (citation omitted).

First, the Showalters' breach-of-contract claim fails. According to Count Three, Olympian and Allied "breached their Contract with the Showalters by failing and refusing to perform in good faith their promise and agreement to securely package and protect the Showalters' personal property for shipment from the Showalters' home in Arizona and delivery of all the personal property to the Showalter's [sic] home in Florida." (Doc. 23 at 5.) This garden-variety breach of contract alleging failure to deliver arises from the interstate-shipping contract and fits squarely within the range of claims preempted by the Carmack Amendment. *See Hall*, 476 F.3d at 688 ("We hold that the Carmack Amendment is the exclusive cause of action for contract claims alleging delay, loss, failure to deliver or damage to property.")

The Showalters' claim in Count Four, breach of the covenant of good faith and fair dealing, likewise derives under Arizona law from an alleged breach of interstate-shipment contract. *See Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 112 Ariz. 392, 396, 542 P.2d 817, 821 (1975) ("[T]here is implied in every contract a covenant of good faith dealing, so that neither party may do anything that will injure or destroy the rights or interests of other parties to the agreement.") Accordingly, that claim, too, is preempted by the Carmack Amendment. *See Hall*, 476 F.3d at 688.

Similarly, the Showalters' remaining claims—negligence, conversion, and

- 5 -

negligent hiring and supervision—are defensively preempted by the Carmack Amendment. *See White v. Mayflower Transit, L.L.C*, 543 F.3d 581, 584-85 (9th Cir. 2008) (holding that the Carmack Amendment constitutes a complete defense to claims including negligence, conversion, fraud, and overcharging). And even while the claim of negligent hiring and supervision seems at first to allege some wrong beyond the other claims, it is preempted because it only arises because of the same underlying conduct: failure to deliver. Allowing this claim to stand would counter the uniformity of liability for common carrriers. *See Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992) ("It is clear that the Carmack Amendment established a uniform national liability policy for interstate carriers.") The Showalters' complaint, at its core, is that common carriers Olympian and Allied failed to deliver a wedding ring that was part of the shipment. However that claim is dressed up—whatever common-law disguise it wears—it is preempted by the Carmack Amendment.

## V. OLYMPIAN AS A PROPER PARTY

Under the Carmack Amendment, an agent of a motor carrier has no independent liability. Instead,

> Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

49 U.S.C. § 13907(a); *see also Nichols v. Mayflower Transit, LLC*, 368 F. Supp. 2d 1104, 1109 (D. Nev. 2003) (dismissing from action the agent of a disclosed principal because agent could not be held liable pursuant to duly issued bill of lading). The Showalters do not contend otherwise, nor do they disagree with the assertion that Olympian acted as an agent of Allied, its disclosed principal, when transporting the Showalters' property. Accordingly, no claim under the Carmack Amendment can lie against Olympian. Should the Showalters amend their Amended Third Party Complaint, Olympian would not be a proper defendant with respect to a claim under the Carmack Amendment. *See Nichols*,

368 F. Supp. 2d at 1109; *Werner v. Lawrence Transp. Sys., Inc.*, 52 F. Supp. 2d 567, 568-69 (E.D.N.C. 1998) (granting motion to dismiss defendant from action because defendant acted as agent of disclosed principal and could not be liable for damages from transportation services); *Fox v. Kachina Moving & Storage*, No. 3:98-CV-0842-AH, 1998 WL 760268, at *1 (N.D. Tex. Oct. 21, 1998) (granting motion to dismiss defendant from action because defendant acted as agent of disclosed principal and could not be liable under Carmack Amendment).

## VI. CONCLUSION

Assuming, pursuant to the Amended Third Party Complaint, that the wedding ring was to be shipped by Olympian and Allied, the Carmack Amendment preempts all five of the Showalters' counterclaims. However, discrepancies between that pleading and the Showalters' Response suggest that the facts underlying the counterclaims may in fact be different from what is indicated in the Amended Third Party Complaint. Accordingly, the Showalters will be given leave to amend, either to state a claim under the Carmack Amendment against Allied or, if appropriate, to alter the Amended Third Party Complaint to clearly allege that the wedding ring was not intended to be shipped.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss (Doc. 25).

**IT IS FURTHER ORDERED** granting Third-Party Plaintiffs Aaron and Audrey Showalter leave to amend their Amended Third Party Complaint (Doc. 23) by August 9, 2013, as contemplated and explained by this Order.

Dated this 26th day of July, 2013.

_____
Neil V. Wake
United States District Judge